IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DUSTIN LEE MORRIS**                                                                                 **PLAINTIFF**

**V.**                        **NO. 4:16-CV-00830-JLH/BD**

**NANCY A. BERRYHILL, Acting Commissioner,**
**Social Security Administration**                                                    **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. Either party may file written objections to this Recommendation. Objections must be specific and must include the factual or legal basis for the objection. To be considered, objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive any right to appeal questions of fact.

**II.   Introduction:**

Plaintiff, Dustin Lee Morris, applied for disability benefits on June 13, 2014, alleging an onset date of December 1, 2013. (Tr. at 14) His claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Morris's application. (Tr. at 25) The Appeals Council denied his request for review. (Tr. at 1) Thus the ALJ's decision now stands as the final decision of

the Commissioner, and Mr. Morris has requested judicial review. For the reasons stated below, the Commissioner's decision should be reversed and remanded for further review.

### III. The Commissioner's Decision:

At Step One of the sequential five-step evaluation process, the ALJ found that Mr. Morris had not engaged in substantial gainful activity since the amended alleged onset date of April 1, 2013. (Tr. at 16) The ALJ concluded at Step Two that Mr. Morris had the following severe impairments: degenerative disc disease of the spine, left hand and wrist arthritis, left shoulder rotator cuff dysfunction, and depression. *Id.*

After finding that Mr. Morris's impairments did not meet or equal a listed impairment (Tr. at 17), the ALJ determined that Mr. Morris had the residual functional capacity ("RFC") to perform light work involving simple tasks and instructions. (Tr. at 19)

The ALJ found that Mr. Morris was unable to perform his past relevant work. (Tr. at 23). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Mr. Morris's age, education, work experience and RFC, that jobs existed in significant numbers in the national economy that Mr. Morris could perform at the light level, specifically, fast-food worker and price marker. (Tr. at 24). Based on that Step Five determination, the ALJ held that Mr. Morris was not disabled. (Tr. at 25)

### IV. Discussion:

    A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are

supported by substantial evidence on the record as a whole. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial" evidence in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In reviewing the decision, the Court considers not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B.   Mr. Morris's Arguments on Appeal

Mr. Morris argues that substantial evidence does not support the ALJ's decision to deny benefits because the ALJ did not give proper weight to the opinions of his treating doctor, Matthew Patoka, M.D. He also argues that the ALJ improperly evaluated Mr. Morris's daily activities. Mr. Morris concludes that the RFC was not reflective of his condition.

Mr. Morris was seriously injured in a 2001 work accident, suffering injuries to his left arm, hand, and shoulder, and to his thoracic and lumbar spine. (Tr. at 42, 398) He was unable to work for five years. (Tr. at 42) He worked in contracting from 2007 to 2013, at which point his pain forced him to quit. (Tr. at 43, 206-207, 239) Over the years, Mr. Morris was treated with a TENS unit, steroid injections, and pain medications, none of which offered satisfactory relief. (Tr. at 20)

A state-agency medical consultant examined Mr. Morris on August 18, 2014. (Tr. at 324-328) Clifford Evans, M.D., found reduced range of motion in the left shoulder and poor strength in Mr. Morris's left hand. (Tr. at 326) He noted numbness and pain in his left hand and wrist, with ankylosis in the left wrist. (Tr. at 327) Dr. Evans found only 30% grip strength in the left hand. *Id*. He found that Mr. Morris could not rise from a squatting position. *Id.* He found pain in the middle and low back with leg raise. *Id*. Dr. Evans diagnosed Mr. Morris with degenerative disc disease of the spine and left hip, left hand arthritis, and left shoulder rotator cuff dysfunction. (Tr. at 328) He concluded that Mr. Morris would have severe limitation for the body as a whole due to pain in the back, left arm, left hand, and left wrist. *Id.*

Mr. Morris sought chiropractic care in September and October of 2014. X-rays by Jeffrey Snider, D.C., revealed upper lumbar compression fracture and spondylolisthesis. (Tr. at 339) Mr. Morris displayed normal upper and lower extremity gross motor strength and reflexes. (Tr. at 339) An iliac compression test was positive for pain to the right side. (Tr. at 340) Mr. Morris had pain in the sacroiliac joint, which indicated a sprain of the posterior sacroiliac ligaments. *Id*. Dr. Snider diagnosed lumbosacral and thoracic spondylosis and sciatica. *Id*. Dr. Snider recommended an MRI. *Id*. At his second and third chiropractic visits, Mr. Morris rated his improvement at 75% to 90%. (Tr. at 341-345) He still had pain in his sacroiliac joint. (Tr. at 341)

On September 26, 2014, Mr. Morris first presented to Dr. Patoka at Millard-Henry Clinic; he saw Dr. Patoka a total of seven times. (Tr. at 333) He explained that his back pain radiated into his feet. (Tr. at 334) Examination showed limited range of motion in the lumbar spine, as well as tenderness in the lumbar and thoracic paraspinal muscles. (Tr. at 335) Mr. Morris had abnormal lordosis, muscle spasms, and decreased sensation in his right calf. *Id*. Dr. Patoka diagnosed Mr. Morris with lumbar spondylosis and lumbar radiculopathy. *Id*.

An MRI of Mr. Morris's lumbar spine on October 14, 2014 indicated bilateral foraminal narrowing, disc dislocation, and loss of disc space height in the thoracic spine. (Tr. at 336) The MRI revealed disc bulges, disc herniation, and bilateral foraminal narrowing with borderline central canal stenosis in the lumbar spine. *Id*.

On October 27, 2014, Dr. Patoka noted normal movement throughout the musculoskeletal system but tenderness in the lumbar spinal and paraspinal muscles. (Tr. at 423) Dr. Patoka found abnormal lordosis and muscle spasms. *Id*. He diagnosed lumbar spondylosis, degeneration of lumbar intervertebral disc, lumbosacral radiculitis, spondylolisthesis, and compression fracture of vertebral column. *Id*. A November 2014 x-ray of Mr. Morris's left wrist and hand showed arthritic changes. (Tr. at 431)

At appointments with Dr. Patoka on January 15, 2015, February 18, 2015, and May 18, 2015, Mr. Morris showed lumbar and paraspinal tenderness. (Tr. at 409, 414,

5

418) On May 18, he showed limited lumbar range of motion, tenderness, and muscle spasm. (Tr. at 409)

Dr. Patoka filled out a medical source statement on December 9, 2014, in which he noted tenderness in the spine, decreased range of motion, positive straight-leg raise, and decreased sensation in the legs. (Tr. at 403) Dr. Patoka wrote that Mr. Morris's prognosis was poor without surgery. *Id*. He opined that Mr. Morris's impairments would last at least twelve months and that the findings were consistent with objective testing. *Id*. Dr. Patoka estimated that Mr. Morris could sit and stand for 5 minutes at a time, and would need a job that permitted shifting positions at will from sitting, standing, and walking. (Tr. at 404) Dr. Patoka also stated that Mr. Morris would need 2-3 breaks per hour lasting 10-15 minutes. *Id*. He said he could never lift 20 pounds. *Id*. Dr. Patoka concluded that Mr. Morris would miss more than four days of work per month. (Tr. at 405)

On June 11, 2015, Dr. Patoka filled out a follow-up medical source statement, where he noted that Mr. Morris's pain, numbness, and muscle spasms were worse, with decreased functional abilities. (Tr. at 433)

A state-agency non-examining medical consultant reviewed Mr. Morris's records on August 20, 2014, without the benefit of the MRI report or Dr. Patoka's records or reports. The non-examining doctor opined that Mr. Morris could perform light work. (Tr. at 95) A second state agency non-examining medical consultant opined on December 5,

2014 that Mr. Morris could perform light work with postural restrictions and left upper extremity restrictions. (Tr. at 117) That consultant did have the benefit of the MRI, but not Dr. Patoka's reports.

The ALJ failed to adequately discuss, or even mention, relevant and probative portions of the medical record. He did not mention Dr. Evans's assessment of severe limitations for the body as a whole. (Tr. at 328) He did not specifically discuss the RFC assigned by the state consultants, especially the notation of postural and upper body limitations in the second consultant's report that conflicted with the first opinion—a conflict that deserved mention. The ALJ gave considerable weight to the non-examining consultants and little weight to the opinions of examining consultant Dr. Evans and treating physician Dr. Patoka.

A treating physician's opinion should be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). The opinion of a treating physician, however, does not automatically control; nor does it eliminate the need to evaluate the record as a whole. *Id.* (quoting *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)). An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician

renders inconsistent opinions that undermine the credibility of the opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Dr. Evans and Dr. Patoka both offered opinions that put considerable restrictions on Mr. Morris. Dr. Evans did not even have the benefit of the MRI or later clinical exam tests, yet still found a severe whole-body impairment. Dr. Patoka's records from eight visits are based on objective findings, including the MRI, which revealed marked injury. The ALJ hung his hat on the least restrictive opinion of a state consultant, throwing out the second opinion, which called for postural and upper body restrictions. He was selective in his evaluation of the medical records, seeming to fit the RFC conclusion.

The RFC in this case was for light work, with no additional postural limitations. Light work requires lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1467(b), 416.967(b). A job in the light category requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id*. Mr. Morris had a left rotator cuff tear and arthritis in his left hand and wrist. Dr. Evans found only 30% grip strength in the left hand. Mr. Morris had pain and tenderness in his lumbar spine, a positive straight-leg raise, and multiple injuries revealed by the MRI. Dr. Patoka stated that Mr. Morris would need breaks, would need to shift positions, and probably would miss more than four days of work per month. It is hard to imagine that Mr. Morris would be capable of performing the lifting, carrying, walking or standing for light work with

these diagnoses and limitations. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The credible evidence from three doctors called for, at a minimum, light work ***with postural limitations***. The RFC did not include postural limitations.

      Dr. Evans and Dr. Patoka found limitations that might rule out all light work. It is not for this Court to assess vocational evidence or assign an RFC, however, but rather to assess whether the ALJ's opinion was based on substantial evidence. There is not substantial evidence to support the ALJ's RFC, because he discounted clinically sound opinions from three doctors, including those of a treating physician and the Commissioner's own examining consultant.

      Mr. Morris also argues that the ALJ improperly classified his activities of daily living. Indeed, the ALJ found only mild restriction in activities of daily living. He found that Mr. Morris could prepare his own meals and perform light housework, drive and shop in stores, spend time with family, and attend church. (Tr. at 23) However, Mr. Morris indicated that he could not use his left hand in personal care, could not clean certain areas of his body, depended on others for food, could not cook on some days, needed help with mowing and laundry, and had to lie down several times a day due to pain. (Tr. at 54, 68, 74, 243-249, 283-284)

The ability to do some activities of daily living does not mean a claimant can perform full-time competitive work. *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995). The limitations on activities that Mr. Morris reported would restrict his functional capacity. *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005)("the fact that Draper tries to maintain her home and tries her best to engage in ordinary life activities is not consistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work"); *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989). Again, the ALJ selectively interpreted evidence, and Mr. Morris's pain cannot be written off simply because he tries to maintain a normal life. The ALJ erred in finding only mild restrictions in activities of daily living.

## V. Conclusion:

For the reasons stated above, the Court should find that the ALJ's decision is not supported by substantial evidence. The ALJ failed to give sufficient weight to the opinions of treating and examining physicians, and he improperly assessed Mr. Morris's activities of daily living. The decision should be reversed and the case remanded with instructions for further review.

DATED this 15th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE